STECO, INC.

v.

S & T MANUFACTURING, INC., Saul Spector, Charles Spector, Jerry L. Blecker, Steco Sales, Inc., and Steco Leasing Incorporated.

Civ. A. No. 89–2239.

United States District Court, E.D. Pennsylvania.

July 17, 1991.

Thomas P. Preston, Philadelphia, Pa., for Steco, Inc.

David F. Michelman, Philadelphia, Pa., for Jerry L. Blecker.

M. Melvin Shralow, Philadelphia, Pa., for S & T Mfg., Inc., Saul Spector, Steco Sales, Inc. and Steco Leasing Inc.

Roger A. Johnsen, Philadelphia, Pa., for Charles Spector.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

In Counts I and II, plaintiff Steco, Inc. ("Steco") alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, by defendants Saul Spector, Charles Spector, and Jerry Blecker[1] for (1) misrepresenting the assets of S & T Manufacturing Inc. ("S & T") which were purchased by Steco and (2) fraudulently diverting funds from Steco following its purchase of S & T's assets. Steco has moved for partial summary judgment on Counts I and II of the complaint against two of the defendants, Charles Spector and Jerry Blecker, for the fraudulent diversion of funds belonging to Steco. However, Steco did not move for summary judgment against Saul Spector or with respect to the activities of defendants Charles Spector and Jerry Blecker prior to the sale of S & T's assets because plaintiff believes that those claims under Counts I and II include genuine issues of facts which require a jury's determination.

In Count I, Steco alleges a violation of section 1962(c) of RICO. Section 1962(c) provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). There are four elements necessary to make out a section 1962(c) claim:

> (1) the existence of an enterprise affecting interstate commerce;
>
> (2) that the defendant was employed by or associated with the enterprise;
>
> (3) that the defendant participated in the conduct or the affairs of the enterprise; and

---

1. The only defendants remaining in this action are the three individuals—Saul Spector, Charles Spector, and Jerry Blecker. By way of a Memorandum and Order dated August 27, 1990 pertaining to the motions for summary judgment filed by defendants Saul Spector, S & T Manufacturing, Steco Sales, Inc., and Steco Leasing Incorporated, I dismissed S & T as a party to this action for lack of pendent-party jurisdiction, and also dismissed Steco Sales, Inc. and Steco Leasing Incorporated by granting their motion for summary judgment.

(4) that the defendant participated in the enterprise's affairs through a pattern of racketeering activity.

*Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir.1989). With respect to the fourth element, one conducts the affairs of an enterprise through a pattern of racketeering activity when *either:*

(1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise; *or*

(2) the predicate offenses are related to the activities of that enterprise.

*United States v. Provenzano*, 688 F.2d 194, 200 (3d Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982). "It is only when the predicate acts are unrelated to the enterprise or the actor's association with it that the nexus element is missing, and consequently there is no RICO violation." *Id.* In the present case, Steco alleges that S & T is the RICO enterprise.

In Count II, Steco alleges a violation of section 1962(d) of RICO which provides as follows:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(d). Under section 1962(d), a plaintiff must allege:

(1) an agreement to commit the predicate acts; and

(2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c).

*Rose v. Bartle*, 871 F.2d 331, 365–67 (3d Cir.1989).

In their response to plaintiff's motion for summary judgment, defendants Charles Spector and Jerry Blecker argued that there was insufficient evidence linking them with S & T and that the predicate acts allegedly committed by them were not related to the affairs of S & T.

This court concluded that the issue of whether there was a sufficient nexus between the post-closing predicate acts of Charles Spector and Jerry Blecker and S & T, the RICO enterprise, was potentially dispositive of this entire action. *See* Memorandum and Order dated August 27, 1990 pertaining to Plaintiff's Motion for Partial Summary Judgment, 1990 WL 127755. Therefore, because the parties had failed to give this issue the attention that it deserved, I ordered the parties to submit supplemental memoranda specifically addressing the issue of whether there was a sufficient nexus between the alleged post-closing predicate offenses and the affairs of the RICO enterprise. *See id.* In addition, even though Steco did not move for summary judgment against defendant Saul Spector, I also permitted Saul Spector to submit a supplemental memorandum because the issue was potentially dispositive of the claims against him as well.

I write now specifically addressing the nexus issue addressed by the parties in their supplemental memoranda.

### I.

 In order to establish the fourth element of a section 1962(c) claim that defendants Charles Spector and Jerry Blecker participated in the affairs of S & T through a pattern of racketeering activity, plaintiff must show, pursuant to the two-prong *Provenzano* test, *either:*

(1) that defendants Charles Spector and Jerry Blecker were enabled to commit the post-closing predicate acts solely by virtue of their positions in S & T or involvement in or control over the affairs of S & T;

*or*

(2) that the post-closing predicate acts were related to the activities of S & T.

*Provenzano*, 688 F.2d at 200.

Plaintiff claims that it has established the requisite nexus between the post-closing predicate acts and the RICO enterprise by showing that, in conducting their post-closing fraudulent activities, Charles Spector and Jerry Blecker utilized the relationships that they had established while employed by S & T, their general knowledge of S & T's business, and a post-office box

in the name of S & T. Defendants counter that assertion by claiming that plaintiff has failed to prove that there exists a nexus between whatever acts they may have committed post-closing and the affairs of the S & T enterprise.

Although S & T and Steco are related corporations in the sense that Steco essentially succeeded to S & T's business and continued the operation of that business after buying S & T's assets, they are separate corporations with separate legal identities. Prior to the sale of S & T's assets, Charles Spector was the President and Plant Manager of S & T, and Jerry Blecker was a principal officer of S & T. After the sale of its assets, S & T remained a viable corporation under the control of defendant Saul Spector, but it did not continue to actively engage in any business.

 In its supplemental memorandum, plaintiff argues that S & T meets the "ongoing organization" element of the test set forth in *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981), for proving the existence of an enterprise.[2] Plaintiff states that, after the sale of S & T's assets, S & T continued to function in a number of significant ways:

1. collecting post-closing accounts receivable;

2. solving environmental problems;

3. defending several products liability lawsuits;

4. selling assets not sold to Steco, including goods from the finished-goods inventory and a company-owned airplane;

5. investigating and resolving outstanding warranty claims on trailers sold by S & T.

This court never concluded or insinuated that S & T was not an ongoing organization or that it was not an enterprise for the purpose of RICO. However, the question of whether S & T is an ongoing organization is separate and distinct from the question of whether the post-closing predicate acts were related to the affairs of S & T. Plaintiff does not appear to recognize the distinction between these two questions. This court is only concerned with the latter. Simply because S & T may have been involved in a greater number of activities after the sale of its assets to Steco than previously known by this court does not make up for the absence of any relationship between the post-closing predicate acts committed by Charles Spector and Jerry Blecker and the post-closing affairs of S & T.

Plaintiff maintains that Charles Spector and Jerry Blecker used their post-closing positions with S & T as well as their post-closing control over S & T's receivables, bank accounts, and post-office box in carrying out their fraudulent scheme of embezzling funds belonging to Steco.

By plaintiff's own account of the facts, Jerry Blecker, on behalf of post-closing S & T, was responsible for collecting post-closing accounts receivable belonging to S & T, as well as selling assets including the sale of goods from the finished-goods inventory and an airplane owned by S & T. On the other hand, Charles Spector, on behalf of post-closing S & T, was responsible for investigating and resolving outstanding warranty claims on trailers sold by S & T. Although plaintiff's supplemental memorandum devotes substantial attention to proving that S & T's post-closing activities extended beyond the collection of accounts receivable, plaintiff fails to identify the post-closing activity or activities through which Charles Spector and Jerry Blecker committed their post-closing fraudulent acts. Plaintiff has not presented this court with evidence that the defendants collected S & T's long-term lease payments through the diversion of Steco's funds, solved S & T's environmental problems through the

---

2. In order to place limits on the broad enterprise concept, particularly an illegitimate association-in-fact enterprise, three elements are necessary to prove the existence of an enterprise. The enterprise must be (1) an ongoing organization (2) whose associates function as a continuing unit and (3) whose identity is separate and apart from the pattern of racketeering activity in which it engages. *United States v. Riccobene,* 709 F.2d 214, 221 (3d Cir.1983) (citing *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981)).

diversion of Steco's funds, defended product liability suits through the diversion of Steco's funds, sold S & T's finished-goods inventory or airplane though the diversion of Steco's funds, or resolved warranty claims through the diversion of Steco's funds.

Plaintiff claims that Jerry Blecker and Charles Spector "utilize[d] their authority and control over S & T's ... bank accounts" in carrying out their fraudulent post-closing activities. This claim is unsupported by the record, which shows that no bank account owned or maintained by S & T was utilized in connection with the post-closing fraudulent scheme. Instead, the diverted checks were deposited into either an account titled "Law Office of Jerry Blecker" or into a personal account of Charles Spector. These checking accounts existed independently of S & T and each defendant's general authority and control over his respective account did *not* derive from and was *not* dependent upon authority from S & T.

■ Jerry Blecker's account, entitled "Law Office of Jerry Blecker," had been in existence for several years prior to the commission of the predicate acts and was used for, among other things, collections in connection with legal services performed for S & T. It is undisputed that Blecker had legitimate authority from S & T to deposit funds into his account from certain transactions involving S & T that were unrelated to the predicate acts. However, it is also undisputed that Blecker was not given any authority or instruction from S & T to deposit funds belonging to Steco into his account. Beyond the fact that Blecker also used his account to hold legitimate funds belonging to S & T, plaintiff has not shown a connection between the manner in which the account was used legitimately to conduct the affairs of S & T and the manner in which the account was used illegitimately to embezzle Steco's funds. Plaintiff has not shown that any of the diverted funds were channeled into S & T or to its stockholder, Saul Spector, or paid out to any persons to perform services for S & T, or used in any way to advance or otherwise

affect the affairs of S & T. *See, e.g., United States v. Cauble,* 706 F.2d 1322 (5th Cir.1983); *United States v. Nerone,* 563 F.2d 836, 851–52 (7th Cir.1977). Therefore, there is an absence of any nexus between the use of Blecker's account to divert funds from Steco and the affairs of S & T. The mere fact that Jerry Blecker carried out his scheme of embezzlement through a bank account that he also used with respect to certain of S & T's affairs does not establish the requisite nexus because Jerry Blecker used his account for purposes other than conducting S & T's affairs.

Four of the embezzled checks were routed through the personal bank account of Charles Spector. This account, unlike Jerry Blecker's law office account, was not authorized to received any checks on behalf of S & T and had no connection whatsoever to S & T. Consequently, it is clear that Jerry Blecker and Charles Spector were not enabled to use these accounts in their scheme to defalcate funds belonging to Steco solely by virtue of their post-closing positions in or involvement with S & T.

Nor is plaintiff's position that it has established the requisite nexus between the post-closing predicate acts and the affairs of S & T strengthened by its assertion that Jerry Blecker had access to the post-office box, from which he took the checks belonging to Steco, solely because of his relationship with and authority from S & T. The undisputed facts demonstrate that Blecker's post-closing access to the post-office box actually arose from his position with Steco and authority therefrom. At the time of the defalcations, Charles Spector and Jerry Blecker were employees of Steco, acting as directors of the corporation and serving as the President and Vice President of Steco, respectively. Post–Office Box J (in St. Clair [Pottsville], Pennsylvania 17901) was a post-office box which S & T had maintained prior to the sale of its assets, but which became Steco's post-office box as of May 20, 1988 through the closing documents. *See* Paragraph 18.3 of the Asset Purchase Agreement and Paragraph 12 of the Escrow Agreement attached as Exhibits D and E to Defendant Jerry Bleck-

er's Reply to Plaintiff's Supplemental Memorandum of Law. Although plaintiff attempts to characterize this post-office box as S & T's post-office box,[3] mail that was sent to the post-office box after the sale of S & T's assets to Steco included mail for Steco, S & T, Saul Spector, Jerry Blecker, Charles Spector, and Ron Spector. During the post-closing period, Jerry Blecker had the responsibility of opening the mail received at this box and distributing it to the appropriate recipient, and he had this responsibility solely as a result of his position with Steco. If Jerry Blecker had not gone to work for Steco after the sale of S & T's assets, then he would not have had the opportunity to embezzle the checks that were sent to Post–Office Box J. But for Blecker's position as Vice President of Steco, Blecker would not have had post-closing access to Post–Office Box J. Thus, Blecker was enabled to divert Steco's checks from the post-office box solely by virtue of his position as Vice President of Steco, which provided him access to the post-office box and provided him with authority to exercise control over checks belonging to Steco.

Thus, it was Charles Spector's and Jerry Blecker's positions at Steco, not their post-closing association with S & T, which were essential in creating the opportunity and means to commit the predicate acts, and without which they would have been unable to commit them. Plaintiff's evidence has failed to satisfy the first prong of the *Provenzano* test by showing that defendants were enabled to commit the predicate acts "solely by virtue" of their positions in, or involvement or control over, S & T. Although plaintiff's evidence may prove that Charles Spector and Jerry Blecker conducted the affairs of Steco through a pattern of racketeering activity, plaintiff has failed to prove that Charles Spector and Jerry Blecker conducted the affairs of S & T through a pattern of racketeering activity.

■ Plaintiff also attempts to satisfy the second prong of the *Provenzano* test by showing that the post-closing predicate acts were related to the affairs of S & T. Plaintiff contends that the fact that Jerry Blecker and Charles Spector used S & T invoices in selling goods to Steco customers and embezzled checks that belonged to Steco, but which were made payable to S & T, establishes that the post-closing fraudulent acts were related to the affairs of S & T. After the sale of its assets, S & T was no longer involved in manufacturing and selling goods. Although post-closing S & T was involved in collecting accounts receivable the rights to which it retained through the Asset Purchase Agreement, the embezzled checks that were made payable to S & T rightfully belonged to Steco, and S & T does not contend otherwise.

■ Plaintiff also contends that the fraudulent defalcations of Steco's funds were related to S & T's affairs because Charles Spector initiated some of the sales, the payments for which were embezzled post-closing, prior to Steco's purchase of S & T's assets. In other words, plaintiff wants this court to look to S & T's pre-closing affairs in order to establish the requisite relationship with the post-closing predicate acts. However, the "related-to" prong of the *Provenzano* test must be interpreted in light of the clear language of the statute. Section 1962(c) of RICO requires defendants "to conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity." Clearly, in order to conduct an enterprise's affairs through a pattern of racketeering activity, the predicate acts which make up the pattern of racketeering and the affairs of the enterprise through which the predicate acts are committed must be contemporaneous. Therefore, in determining whether there is a relationship between the post-closing predicate acts and the affairs of S & T, this

3. Plaintiff's complaint, which was drafted at a time when plaintiff's attention had not yet been drawn to its need to recast facts to appear as though the predicate acts were committed by defendants while they were conducting or participating in S & T affairs, states that "the Accurate check in payment for the trailer was retrieved from *Steco's* post office box by Blecker." *See* Complaint at ¶ 37 (emphasis added).

court must look to S & T's affairs as they existed at the time when the post-closing predicate acts were committed. Defendants cannot establish the requisite nexus between the post-closing predicate acts and the affairs of S & T by looking to S & T's affairs as they existed pre-closing.

In an attempt to salvage its federal RICO counts, plaintiff "requests leave to amend its Complaint to allege the enterprise as *the business whose name at various points in time was S & T (also trading as Steco Trailers) and Steco.*" See Plaintiff's Supplemental Memorandum of Law at p. 6 n. 3 (emphasis added). In making this request, it is obvious that plaintiff did not look to the definition of "enterprise" which provides:

> "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

18 U.S.C. § 1961(4).

The term "business" is not a legal entity, nor does it denote a particular legal status. In Black's Law Dictionary, "legal entity" is defined as follows:

> An entity, other than a natural person, who has sufficient existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations.

Black's Law Dictionary 804 (5th ed. 1979). Clearly, "the business of manufacturing trailers" is not an entity that is able to be sued or taxed, or one that is able to enter into contracts. Although a "business" operates through a legal entity, all businesses do not assume the same legal-entity status. In other words, the legal entity, whether it be a sole-proprietorship, partnership, corporation, or association, is the structure through which a business is conducted. Pursuant to the definition of "enterprise" set forth in RICO, plaintiff may not allege as its RICO enterprise "the business [of manufacturing trailers] whose name at various points in time was S & T (also trading as Steco Trailers) and Steco." Consequently, this court shall not permit plaintiff leave to amend its complaint.

In essence, what plaintiff wants to do is allege two enterprises—the corporation of S & T and the corporation of Steco, and thus establish a pattern of racketeering activity by piggybacking the predicate acts committed through Steco onto the predicate acts committed through S & T. To permit plaintiff to allege two enterprises would be directly contrary to the clear language of the RICO statute which refers only to "enterprise" in the singular sense. 18 U.S.C. § 1962. Furthermore, plaintiff has not provided this court with any authority for permitting a plaintiff to establish the requisite pattern of racketeering by piggybacking the predicate acts committed through one enterprise onto the predicate acts committed through another enterprise. To permit the allegation of more than one enterprise in order to establish a pattern of racketeering activity would not only be contrary to the clear language of the statute but would also bring even more cases within the Draconian grasp of RICO.

## II.

I conclude that plaintiff has failed to establish (1) that the defalcations of checks belonging to Steco were committed by Charles Spector and Jerry Blecker solely by virtue of their post-closing positions with S & T or solely by virtue of their post-closing involvement or control over the post-closing affairs of S & T, or (2) that the defalcations of checks belonging to Steco were related to the post-closing affairs of S & T. Consequently, I shall deny plaintiff's motion for partial summary judgment.

The Federal RICO counts, Counts I and II, also name defendant Saul Spector. My conclusion that plaintiff has failed to establish the requisite nexus between the post-closing predicate acts of Charles Spector and Jerry Blecker and the post-closing affairs of S & T is also binding on Saul Spector with respect to his alleged involvement in the post-closing fraudulent scheme. In other words, I conclude that the defalcations of Steco's checks were accomplished through the affairs of Steco—not S & T, and hence that plaintiff has not set forth a

viable section 1962(c) claim with respect to the post-closing predicate ˙acts.

■ Consequently, Count I must fail in its entirety. To the extent that it pertains to the post-closing predicate acts, Count I fails because the requisite nexus has not been established between the post-closing predicate acts and the affairs of the RICO enterprise. To the extent that it pertains to the pre-closing predicate acts, Count I fails because the pre-closing predicate acts by themselves do not meet the continuity requirement of a RICO pattern,[4] and I so held in my first Memorandum and Order pertaining to plaintiff's motion for partial summary judgment. *See* Memorandum and Order dated August 27, 1990 at p. 10.

■ Accordingly, Count II, which alleges a RICO conspiracy under section 1962(d), must also fail. A claim cannot be ˙made under section 1962(d) in the absence of a viable claim under section 1962(a), (b), or (c). *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 n. 1 (3d Cir.1991); *Leonard v. Shearson Lehman/American Express, Inc.*, 687 F.Supp. 177, 182 (E.D.Pa.1988). Since plaintiff has failed to establish a viable claim under section 1962(c), its claim under section 1962(d) cannot stand.

Counts I and II are the only counts in the seven-count complaint which set forth federal claims. Subject-matter jurisdiction in this action is based solely on the federal RICO claims because diversity of citizenship does not exist.[5] Since I am dismissing Counts I and II because they do not set forth viable claims under RICO, I shall also dismiss the counts setting forth state law claims for lack of pendent jurisdiction.

An appropriate order follows.

ORDER

Upon consideration of plaintiff's motion for partial summary judgment, defendants' responses, the parties' supporting and supplemental memoranda, and for the reasons stated in the accompanying memorandum,

IT IS ORDERED THAT

1. Plaintiff's motion for partial summary judgment is DENIED.

2. Counts I and II are dismissed for failing to set forth viable claims under RICO.

3. Counts III, IV, V, VI, and VII are dismissed for lack of pendent-claim jurisdiction.

4. Plaintiff's complaint is dismissed in its entirety.

---

4. The five-month pre-closing period, during which the alleged pre-closing predicate acts relating to the sale of the assets of S & T were committed, is not sufficient to establish continuity. *See, e.g., Banks v. Wolk,* 918 F.2d 418, 423 (3d Cir.1990) (a fraudulent scheme which occurred over an eight-month period but which did not constitute a threat of continued criminal activity did not establish a RICO pattern); *Marshall–Silver Constr. Co. v. Mendel,* 894 F.2d 593,

597–98 (3d Cir.1990) (predicate acts extending over a period of less than seven months which posed no threat of continued criminal activity were not sufficient to demonstrate continuity).

5. Plaintiff Steco's principal place of business is in Pennsylvania, and both defendants Charles Spector and Jerry Blecker are citizens of Pennsylvania.