SPECIAL PURPOSE ACCOUNTS RE-CEIVABLE COOPERATIVE COR-PORATION and Canadian Imperial Bank of Commerce, as Agent, Plaintiffs/Counterdefendants,

v.

PRIME ONE CAPITAL COMPANY, L.L.C., Signature Automotive Group, Inc., and Thomas Borzilleri, individually, Defendants/Counterplaintiffs.

No. 00–6410–Civ.

United States District Court, S.D. Florida.

April 16, 2002.

Clement Ryan Reetz, Greenberg Traurig, P.A., Miami, FL, Lori Lepar Roeser, Joel M. Hammerman, Holly A. Harrison, David F. Graham, Sheri A. Malec, Sidley Austin Brown & Wood, Chicago, IL, for Special Purpose Accounts Receivable Cooperative Corp., Canadian Imperial Bank of Commerce.

Lance A. Harke, Harke & Clasby, Miami, FL, for Fresno Auto Auction.

Joseph A. DeMaria, Matias Rafael Dorta, Patricia Maria Baloyra, Tew Cardenas Rabak Kellogg, Miami, FL, Bruce David Green, Fort Lauderdale, FL, for Prime One Capital Co., L.L.C., Signature Auto. Group, Inc., Thomas Borzilleri.

James Andrew Hinds, Jr., Paul R. Shankman, Los Angeles, CA, for Novas Rent A Car, Inc.

### ORDER ON DEFENDANTS'
### MOTION TO DISMISS

GOLD, District Judge.

**THIS CAUSE** is before the court upon the motion to dismiss (DE # 261) filed by the defendants Prime One Capital Co., LLC ("Prime One"), Signature Automotive Group, Inc. ("Signature"), and Thomas Borzilleri ("Borzilleri") (collectively "the defendants"). The plaintiffs, Special Purpose Accounts Receivable Cooperative Corp. ("Special Purpose") and Canadian Imperial Bank of Commerce ("CIBC") (collectively "the plaintiffs"), have filed an eleven count complaint against the defendants, alleging as follows: count I, conversion of lease proceeds; count II, conversion of vehicles; count III, tortious interference with business and contractual relationships; count IV, unjust enrichment; count V, violations of 18 U.S.C. § 1962(c) for the Prime One enterprise; count VI, violations of 18 U.S.C. § 1962(d) for the Prime One enterprise; count VII, violations of 18 U.S.C. § 1962(c) for the T & W and Prime One enterprise; count VIII, violations of 18 U.S.C. § 1962(d) for the T & W and Prime One enterprise; count IX, violations of 18 U.S.C. § 1962(c) for the Signature and Prime One enterprise; count X, violations of 18 U.S.C. § 1962(d) for the Signature and Prime One enterprise; and count XI, permanent injunctive relief. Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1332 in that the parties are diverse and the amount in controversy exceeds $75,000.00.

The defendants seek to dismiss counts V through X of the plaintiffs' second amended complaint. According to the defendants, these counts, which allege violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C § 1962, et seq., must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state legally cognizable claims.[1] The court has reviewed the parties' arguments, the pleadings filed in this case, and the applicable case law and has determined that the defendants' motion shall be granted in part and denied in part.

### Factual and Procedural Background[2]

On September 21, 2001, the plaintiffs filed a motion for leave to file a second amended complaint. Through amendment, the plaintiffs sought to assert the RICO claims that are the subject of this order.[3] The defendants opposed this motion by arguing that the plaintiffs' proffered claims did not support a cause of action under the RICO statute. On November 21, 2001, the court granted the plaintiffs' motion for leave to file a second amended complaint. Rather than ruling on the merits of the proffered RICO claims at that time, the court stated that the defendants' substantive points regarding the plaintiffs' RICO claims were better raised in a motion to dismiss or a motion for summary judgment. As a result, the defendants have now filed the instant motion to dismiss.

The relevant facts of this case have been laid out in detail in *Special Purpose Ac-*

---

1. On December 19, 2000, the court denied the defendants' motion to dismiss the plaintiffs' original complaint, which asserted claims for conversion of lease proceeds, conversion of vehicles, tortious interference with business and contractual relations, and permanent injunctive relief. *See Special Purpose Accts. Rec. Coop. Corp. v. Prime One Cap. Co., LLC,* 125 F.Supp.2d 1093 (S.D.Fla.2000).

2. These facts are derived from the allegations contained in the plaintiffs' second amended complaint.

3. The plaintiffs also sought to add an unjust enrichment claim, which the defendants did not oppose.

*counts Receivable Cooperative Corp. v. Prime One Capital Co., LLC,* 125 F.Supp.2d 1093, 1096–98 (S.D.Fla.2000). For purposes of this order, however, it is helpful to discuss the plaintiffs' allegations again, in light of the amendments that have been made to the prior complaints.

### I. The Plaintiffs Obtain Security Interests

In 1998, plaintiffs CIBC and Special Purpose entered into an agreement with T & W Funding Co. VIII, LLC, ("T & W Funding") and T & W Financial Services Co., LLC, ("T & W Financial"). Pursuant to this agreement, Special Purpose loaned funds to T & W Funding, which used these funds to purchase vehicle leases. T & W Financial would service these leases, or collect lease payments and vehicle liquidation proceeds. T & W Financial then would remit the payments to CIBC, which served as Special Purpose's agent. As security for its obligation to Special Purpose, T & W Funding granted to CIBC a security interest in all the assets purchased by T & W Funding. *See* Pl.2d Am.Compl. at ¶ 15.

### II. The Defendants Begin to Service Leases

A few months after CIBC, Special Purpose, and the T & W entities entered into their agreement, T & W Financial entered into a joint venture arrangement with Joseph David Pacifico ("Pacifico") and defendant Thomas Borzilleri ("Borzilleri") to create Prime One. T & W Financial and Pacifico eventually withdrew from the joint venture, and Borzilleri remained as Prime One's only member.

Prime One and Signature, an automotive fleet acquisition and management company owned by Borzilleri, marketed vehicle leasing services, negotiated terms and drafted lease contracts with potential lessees, and entered into vehicle fleet lease contracts with lessees. Prime One and Signature

assigned their interest in these lease contracts to T & W Financial in return for the necessary funding to purchase the vehicles required by their lease contracts. T & W Financial, in turn, obtained its funding from Special Purpose under their 1998 agreement. The titles for the vehicles purchased by Signature and Prime One were issued in the name of T & W Financial or in the lessees' names showing T & W Financial as lien holder. *See* 2d Am. Compl. at ¶ 26. Prime One, Signature, and Borzilleri were aware at all times that the leases they originated were being assigned to T & W Financial.

Without the plaintiffs' consent, Borzilleri, acting through Prime One and Signature, undertook certain aspects of servicing the leases for which T & W Financial was responsible. T & W Financial instructed Prime One to remit the lease proceeds to T & W Financial with sufficient information to identify the particular vehicle leases to which the proceeds were attributable. *See* 2d Am.Compl. at ¶¶ 30–31.

### III. The Defendants' Allegedly Fraudulent Scheme

The defendants and Paul Luke ("Luke"), a representative from T & W Financial, were aware that T & W Financial had acquired the funds it provided to Prime One and Signature from T & W Financial's lenders, such as CIBC and Special Purpose. The defendants and Luke also were aware that CIBC and Special Purpose had acquired a security interest in the particular lease payments collected by Prime One and Signature and that T & W Financial was obligated to remit these proceeds to the plaintiffs. Nevertheless, beginning on June 15, 1999, Prime One, Signature, Borzilleri, and Luke allegedly designed a fraudulent scheme for the purpose of misappropriating T & W Financial's lenders of

their interest in lease proceeds. *See* 2d Am.Compl. at ¶ 34. As part of this alleged scheme, the defendants would wrongfully collect, retain, and reinvest lease proceeds in which T & W Financial's lenders had a secured interest. According to the complaint, the defendants withheld from T & W Financial lease proceeds acquired from the liquidation sale of vehicles. *See* 2d Am.Compl. at ¶ 36.

By the summer of 1999, T & W Financial's senior management decided that, in light of servicing disruptions caused by the defendants, T & W Financial needed to assert greater direct control over the servicing of leases originated by Prime One and Signature. As a result, T & W Financial informed Borzilleri that T & W was going to conduct some of the servicing activities that previously had been undertaken by Prime One. Despite this restriction, in August of 1999, the defendants and Luke allegedly created fraudulent general powers of attorney, which purported to give both Signature and Prime One powers to act on behalf of T & W Financial. *See* 2d Am.Compl. at ¶ 38. Luke signed these powers on behalf of T & W Financial, even though the defendants knew that Luke lacked the authority to bind T & W Financial to the documents.

The plaintiffs claim that, in addition to collecting, retaining, and reinvesting lease proceeds that belonged to the plaintiffs, the defendants took steps to affirmatively conceal their misconduct from the plaintiffs. For example, Luke provided the plaintiffs with monthly servicer reports on behalf of T & W Financial that contained false information about T & W Financial's lease payments. In the Fall of 1999, the servicer reports began to reveal an increasing amount of delinquent lease payments from T & W Financial. Rather than telling the plaintiffs that these delinquencies stemmed from the proceeds that were being wrongfully retained by the de-

fendants, Luke represented to the plaintiffs that the delinquency was due to lessees' failures to submit timely payments. *See* 2d Am.Compl. at ¶ 46.

## IV. T & W Defaults

On December 1, 1999, CIBC notified T & W Financial that it had defaulted on its obligations under their agreement. On December 20, 1999, CIBC appointed Finova Loan Administration, Inc. ("Finova"), as its servicer. As a result, Finova assumed all of T & W Financial's rights and responsibilities as servicer to T & W Funding's lease portfolio. CIBC subsequently notified the defendants and all vehicle lessees of this change.

According to the complaint, the defendants have continued to misrepresent themselves to lessees as the lessor and servicer of the leases, despite their knowledge that T & W Financial was been replaced by Finova. *See* 2d Am.Compl. at ¶¶ 55, 56. The defendants have instructed lessees to make payments to them or to sell or auction vehicles that are subject to the plaintiffs' security interest. The defendants also have instructed the lessees to remit the proceeds from these sales to them, rather than to the plaintiffs or to Finova. *See* 2d Am.Compl. at ¶ 58.

### Standard for Motion to Dismiss

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the

light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Svcs., Inc.*, 769 F.2d 700, 703 (11th Cir.1985) (citation omitted); *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion V v. Reyes*, 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

### Analysis

The plaintiffs' second amended complaint adds federal RICO claims to the state law claims of the two prior complaints. The plaintiffs contend that the defendants have engaged in three different enterprises: the Prime One enterprise, the T & W Financial/Prime One enterprise, and the Signature/Prime One enterprise. According to the complaint, each of these enterprises was formed to originate, service, and profit from automobile leases, and each enterprise has engaged in a pattern of racketeering that involves a fraudulent scheme to deprive the plaintiffs of the security interest they obtained through their financing arrangement with T & W Financing. The defendants seek to dismiss the plaintiffs' RICO claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The parties' arguments are addressed in more detail below.

### I. This Case Is More Than a "Garden-Variety" Business Dispute

█ The first argument asserted by the defendants in their motion is that the court should dismiss the plaintiffs' RICO claims because the plaintiffs have asserted these claims only "in an effort to over-complicate this case, to further impugn the business reputations of the Defendants, and to use this Court as a weapon in Plaintiffs' continued heavy-handed bludgeoning of Defendants." Def.Mtn. at 1. According to the defendants, this case is nothing more than a "garden-variety" business dispute between two creditors of a bankrupt business entity, and it is not the type of matter that Congress intended to address through RICO. *See Banco Latino Int'l v. Gomez Lopez*, 95 F.Supp.2d 1327, 1333 (S.D.Fla. 2000). ("RICO's civil remedy was not intended to create a new means of recovery in garden variety commercial disputes and commercial litigators cannot transform every commercial dispute into a civil RICO action."). The defendants urge the court to dismiss the complaint because they contend that allowing this case to go forward "would permit the transformation of disputes between creditors into racketeering actions simply due to the use of interstate telephone, a facsimile or the U.S. mail". Def.Mtn. at 4.

These grounds are too amorphous to entitle the defendants to relief on their motion to dismiss. The defendants rely solely on the dicta of various courts that have cautioned against converting business disputes into RICO claims. The allegations of the instant case, however, involve more than competing creditors' claims, as urged by the defendants. The court cannot disregard the plaintiffs' allegations

that the defendants have stolen the plaintiffs' property by misrepresenting the state of the property to third parties and by executing false powers of attorney. According to the complaint, the defendants have knowingly converted the plaintiffs' lease proceeds and motor vehicles. Such allegations are far-removed from a "garden variety" breach of contract claim, and they must be taken as true for purposes of this motion to dismiss.

Moreover, there simply is no law that summarily dismisses RICO claims without first analyzing the merits of the claims under applicable law. For example, although the courts, in *Western Associates Limited Partnership v. Market Square Assoc.,* 235 F.3d 629 (D.C.Cir.2001), and *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016 (7th Cir.1992), observed that RICO claims were not appropriate for the business disputes they were deciding, the courts made these statements only at the conclusion of their legal analysis, which contained a lengthy discussion of why the RICO claims failed on their merits. *Western Assoc.,* 235 F.3d at 636; *Midwest Grinding,* 976 F.2d at 1025.

The United States Supreme Court repeatedly has rejected the argument that RICO should be narrowly construed as a per se exclusion of business disputes. In *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Court stated it could not accept the defendants' position that RICO's broad language should be interpreted narrowly because "the legislative history shows that Congress knew what it was doing when it adopted commodious

language capable of extending beyond organized crime". *Id.* at 246–47, 109 S.Ct. 2893. In light of the Court's recognition that RICO applies both to legitimate and illegitimate enterprises engaged in criminal activities, and the plaintiffs' allegations that the defendants in this case have misappropriated millions of dollars that belonged to the plaintiffs, the court will not summarily dismiss the plaintiffs' RICO claims. Rather, it will go on to examine whether the claims satisfy the legal criteria that is applied to RICO claims by the courts.

## II. Elements of RICO Claims

■ The RICO Act, 18 U.S.C. §§ 1961, et seq., provides civil and criminal liability for persons engaged in "a pattern of racketeering activity". 18 U.S.C. § 1962(a)–(d).[4] Persons injured by reasons of a RICO violation have a civil cause of action under the terms of the act. *See* 18 U.S.C. § 1964. The four elements of civil RICO liability are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Durham v. Business Mgmt. Assocs.,* 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The phrase "racketeering activity" is defined as including any act which is indictable under a lengthy list of criminal offenses, including the federal statutes prohibiting mail and wire fraud, obstruction of justice, and tampering with witnesses. *See* 18 U.S.C. § 1961(1).

The defendants have advanced three arguments for dismissal of the plaintiffs'

---

**4.** The relevant portions of the RICO statute read as follows:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section. 18 U.S.C. § 1962(b)–(d).

RICO claims. First, they contend that the plaintiffs cannot establish a pattern of racketeering because they have failed to satisfy the continuity requirement. Second, the allegations regarding mail and wire fraud fail to establish predicate acts because the plaintiffs cannot establish reasonable reliance. Finally, the defendants argue that the plaintiffs cannot use the defendants' litigation conduct to extend the pattern of racketeering activity. While the court finds these arguments persuasive, the points raised by the defendants do not entitle them to dismissal of all of the plaintiffs' RICO counts.

## A. Pattern of Racketeering Activity

■ To satisfy the "pattern of racketeering activity" requirement, the plaintiffs must allege that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts are related to one another; and (3) the predicate acts demonstrate a continuing nature of criminal conduct. *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239–43, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Jackson v. Bellsouth Tel., Inc.*, 181 F.Supp.2d 1345, 1357 (S.D.Fla.2001). The most contentiously debated part of this test is the continuity prong. In *H.J., Inc.*, the Supreme Court held that two predicate acts may not be sufficient to prove a pattern of racketeering activity. *Id.*, 492 U.S. at 237–38, 109 S.Ct. 2893. Rather, the Court imposed a continuity-plus requirement, which requires a plaintiff to "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. 2893 (emphasis in original); *see also Jones v. Childers*, 18 F.3d 899, 911 (11th Cir.1994).

■ According to the Court, continuity can be shown either through (1) repeated predicate acts over a closed but substantial period of time that demonstrates a defendant's long-term criminal activity or (2) where a RICO action is brought before continuity can be established, a threat of continuity can be demonstrated. *See H.J., Inc.*, 492 U.S. at 241–42, 109 S.Ct. 2893. The first manner of proving continuity is referred to as "closed-ended continuity". Courts undertake a temporal analysis that looks at the length of time of the ongoing activity to determine whether the continuity element is satisfied. *See id.* at 242, 109 S.Ct. 2893 (stating that RICO plaintiff may prove closed period of conduct "by proving a series of related predicates extending over a substantial period of time"). The second manner of establishing continuity is referred to as "open-ended", and its principal component is the "threat" of continuity. A "threat" is established where "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future" or where "the predicate acts or offenses are part of an ongoing entity's regular way of doing business". *Id.* at 241–42, 109 S.Ct. 2893.

■ In their second amended complaint, the plaintiffs plead three alternative enterprises—the Prime One enterprise, the T & W/Prime One enterprise, and the Signature/Prime One enterprise. The defendants' motion to dismiss challenges only the ability of the T & W/Prime One enterprise to satisfy the continuity requirement.[5] According to the defendants, the T & W/Prime One enterprise was close-ended by definition because it terminated upon T & W's voluntary withdrawal from Prime One. The complaint alleges that this

---

5. Because the defendants' motion addresses only the continuity requirement as applied to the T & W/Prime One enterprise, this order does not discuss the continuity requirement in light of the other alleged enterprises.

enterprise existed from July 9, 1998, when T & W joined Borzilleri and Pacifico to form Prime One, until December 1, 1999, when T & W withdrew from the Prime One joint venture. *See* 2d Am.Compl. at ¶ 139. The defendants correctly note that the RICO enterprise could not have begun until June 15, 1999, when the first predicate act alleged in the complaint occurred. *See* 2d Am.Compl. at ¶¶ 35–36; *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1024 n. 5 (7th Cir.1992) (finding that pattern of activity began when first predicate act of mail fraud occurred). At best, the plaintiffs' complaint alleges that the T & W/Prime One enterprise existed from June 15, 1999, until December 1, 1999, when T & W withdrew from Prime One and the last alleged date of T & W's involvement in this case. This time period spans a total of five and one-half months, which is legally insufficient to establish a pattern of a closed-ended enterprise. *See H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. 2893 ("Predicate acts extending over a few weeks or months do not satisfy this requirement."); *Aldridge v. Lily–Tulip, Inc.,* 953 F.2d 587, 593 (11th Cir.1992) (finding that six months was insufficient period to satisfy closed continuity requirement); *Jackson v. Bellsouth Tel., Inc.,* 181 F.Supp.2d 1345, 1359 (S.D.Fla.2001) (same); *Delfrate v. Letts,* No. 95–185–Civ, 1996 WL 420880 *8–9 (M.D.Fla. Mar.25, 1996) (stating that nine months was insufficient period to establish closed continuity). Because the plaintiffs cannot establish the open-ended or closed-ended continuity requirement for the T & W/Prime One enterprise,[6] they have failed to establish a pattern of racketeering activity for this enterprise. As such, counts VII and VIII of the second amended complaint must be dismissed.

### B. Standing to Assert Fraud Claims

 As noted above, a plaintiff must establish predicate acts that constitute a pattern of racketeering activity in order to state a claim for a RICO violation. The defendants argue that the plaintiffs cannot meet this requirement because the fraudulent acts alleged in the complaint are legally insufficient. The plaintiffs' complaint relies heavily on fraudulent acts that were directed to third parties. Specifically, the plaintiffs claim that the defendants defrauded third parties by telling them that they were authorized to collect the lease and vehicle-sale proceeds. The plaintiffs argue that, by misrepresenting the truth to third parties, the defendants have defrauded the plaintiffs of millions of dollars. According to the defendants, the plaintiffs lack standing to pursue RICO claims based upon these predicate acts because the plaintiffs did not rely upon the alleged misrepresentations made by the defendants to third parties.

The defendants' argument stems from the requirements imposed by the

---

**6.** The T & W and Prime One enterprise cannot be construed as open-ended because the enterprise ceased to pose a threat of continued improper conduct after T & W withdrew and ended its involvement with the plaintiffs. Additionally, the second amended complaint does not allege that T & W engaged in any improper conduct after December 1, 1999. All of the alleged activities undertaken by T & W (i.e., the creation of fraudulent powers of attorney, the transmission of false servicing reports, and the involvement with the defendants' collection of funds) were finite in duration. If T & W ceased to engage in improper conduct on a date certain, neither it nor its actions could continue to pose a threat of racketeering activity. The defendants correctly note that the plaintiffs cannot attribute the alleged activities of the remaining two enterprises to the T & W/Prime One enterprise in order to establish "open-ended" continuity. *See Steco, Inc. v. S & T Mfg., Inc.,* 772 F.Supp. 1495, 1502 (E.D.Pa.1991) (stating that plaintiff may not "establish the requisite pattern of racketeering by piggybacking the predicate acts committed through one enterprise onto the predicate acts committed through another enterprise").

Eleventh Circuit regarding fraud in civil RICO cases. In order to establish RICO fraud, courts require private plaintiffs to show that the federal fraud statute was violated and that they have suffered injury as a result of the violation. *See Byrne v. Nezhat*, 261 F.3d 1075, 1110 (11th Cir. 2001).[7] In *Byrne*, the Eleventh Circuit stated that the fraud statutes have been:

> "interpreted by the Supreme Court and lower courts to include a proximate cause requirement—the plaintiff's injury must have been proximately caused by the commission of predicate acts". . . . This court's restrictive view of the proximate cause requirement means that a plaintiff has standing to sue only if his injury flowed directly from the commission of the predicate acts . . . . *As such, a plaintiff lacks standing to assert, as the basis for mail fraud, misrepresentations directed toward another person or entity.*

*Id.* at 1110 (emphasis added) (citations omitted); *see also id.* at 1111, 1112 (holding that plaintiff lacked standing to assert RICO claim for mail fraud based on misrepresentations made to third parties); *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360–61 (11th Cir.2002) (stating that plaintiff bringing civil RICO case based upon mail or wire fraud must show he relied to his detriment on misrepresentations made in furtherance of that scheme).

▮ In light of the principle clearly announced and reiterated throughout *Byrne*, the court finds that the defendants correctly have stated the rule regarding reliance in the Eleventh Circuit, which, by the court's own admission, has taken a "restrictive view" of the proximate cause and reliance requirement. *See Byrne*, 261

F.3d at 1110 n. 73. *Byrne's* rule, that a plaintiff cannot base a RICO claim for fraud on misrepresentations made to third parties, is consistent with Eleventh Circuit precedent. For example, in *Johnson Enterprises of Jacksonville, Inc. v. FPL Group*, 162 F.3d 1290 (11th Cir.1998), the Eleventh Circuit held that a plaintiff could not assert a RICO claim based on fraudulent misrepresentations made to third parties. In discussing the standing requirement, the court assumed that the plaintiff had been injured as a result of the defendant's statements to the third parties, but it held that the plaintiff "did not suffer a *direct* injury, proximately caused by those acts, as required under [18 U.S.C. § ] 1964(c)". *Id.* at 1318. The court quoted with approval from *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir.1991), a prior Eleventh Circuit case that stated "the plaintiff . . . must have relied to his detriment on misrepresentations made in furtherance" of the scheme to defraud. *Johnson Enter.*, 162 F.3d at 1318 (quoting *Pelletier*, 921 F.2d at 1499–1500). The Eleventh Circuit concluded in *Johnson Enterprises*, "Because the misrepresentations the defendants are said to have made were directed to the franchising authorities [the third parties], not [the plaintiff], [the plaintiff] lacks standing under section 1964(c) to prosecute a claim based on such misrepresentations." *Id.*, 162 F.3d at 1318; *see also Israel Travel Advisory Service v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir.1995) (stating that plaintiff could not recover under RICO on basis of underlying mail fraud where fraud was committed upon customers, not plaintiff); *Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 165 F.Supp.2d 1345, 1351–52 (S.D.Fla.2001) (dismissing RICO

---

7. Although *Byrne* involved the federal mail fraud statute, the causation analysis employed by the Eleventh Circuit in that case has been extended to other fraud statutes. *See Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360–61 (11th

Cir.2002) (stating that causation requirement applies to both mail and wire fraud); *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991) ("The elements of mail and wire fraud are identical.") (citations omitted).

claim upon observing, "[I]n order to establish proximate causation in a civil RICO action predicated on fraud, the purported victim must make the same showing of reasonable reliance that is required for establishing injury from common law fraud."); *Banco Latino Int'l v. Gomez Lopez,* 95 F.Supp.2d 1327, 1334 (S.D.Fla. 2000) (stating that, in a civil RICO case, plaintiff alleging fraud as predicate act must show he relied to his detriment on misrepresentations made in furtherance of scheme).

The plaintiffs have attempted to avoid the Eleventh Circuit's clear rule by citing to the decisions of other circuit courts that conflict with the Eleventh Circuit. These cases are unpersuasive because, in presenting them to the court, the plaintiffs have ignored the fact that the Eleventh Circuit recognizes that it construes the proximate cause requirement of 18 U.S.C. § 1964(c) more narrowly than other circuits. *See Byrne,* 261 F.3d at 1111 (stating that Eleventh Circuit's view was "restrictive").

The plaintiffs also rely on a footnote from *All Care Nursing Service, Inc. v. High Tech Staffing Services, Inc.,* 135 F.3d 740 (11th Cir.1998), where the Eleventh Circuit stated, "Reliance is only an element of a RICO claim to the extent that a RICO plaintiff must prove he was injured by reason of the RICO defendant's deception and fraud.... But no argument is made by the [RICO defendants] that injury was inadequately shown. So, lack of reliance does not require reversal on this claim." *Id.* at 745 n. 10. It is clear from this statement that a plaintiff's reliance on misrepresentations was not an issue in *All Care Nursing Service.* Even if it was, it cannot be inferred from the Eleventh Circuit's footnote that it was abrogating the reliance requirement. Assuming that the plaintiffs' interpretation of the footnote is

correct, their argument still would fail because, since *All Care Nursing Service,* the Eleventh Circuit has reiterated that reliance on the defendants' misrepresentations by the plaintiff is a necessary element in order to state a RICO claim based on a fraud theory. *See Sikes,* 281 F.3d at 1361 (stating that district court properly recognized that "reliance is a *necessary* element of a civil RICO claim based on mail or wire fraud") (emphasis added); *Byrne,* 261 F.3d at 1111 (stating elements for mail fraud as conjunctive, requiring plaintiff as target *and* plaintiff relying to his detriment) (emphasis added).

The Eleventh Circuit cases compel the conclusion that the plaintiffs in this case lack standing to assert their claims for mail fraud and wire fraud. The second amended complaint alleges that the defendants made misrepresentations to lessees as part of their scheme to defraud the plaintiffs of their lease proceeds and motor vehicles. The plaintiffs could not have relied on these representations because they were made to third parties. Accordingly, under the rule set forth by the Eleventh Circuit in *Byrne,* the plaintiffs' claims regarding mail and wire fraud must be stricken.

 Although the plaintiffs lack standing to assert fraud as a predicate act, dismissal of the remaining RICO counts, as urged by the defendants, is not warranted. The predicate acts constituting the RICO claims are not based entirely on mail and wire fraud. The second amended complaint alleges that the defendants have engaged in numerous other illegal activities. For example, the plaintiffs contend that Prime One and Borzilleri have deposited numerous out-of-state checks representing lease proceeds that the defendants knowingly converted, and these deposits were made in violation of the National Stolen Property Act, 18 U.S.C. § 2314.[8]

8. The defendants argue that the plaintiffs'

predicate acts under the National Stolen

*See* 2d Am.Compl. at ¶¶ 84–87. Additionally, these defendants allegedly have committed mail fraud by mailing checks containing illegal proceeds and by mailing false duplicate title certificates. *See* 2d Am.Compl. at ¶¶ 88, 89, 90, 94. Because the defendants have not otherwise shown that these allegations fail to constitute predicate acts, the plaintiffs' remaining RICO claims will not be dismissed.

## C. Litigation Conduct

 In addition to the predicate acts discussed in the preceding subsection, the plaintiffs allege that the defendants have obstructed justice in violation of 18 U.S.C. § 1503. At the outset, the court observes that federal obstruction and intimidation claims are only applicable to federal proceedings, not state court proceedings. *See Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.,* 165 F.Supp.2d 1345, (S.D.Fla.2001) (citations omitted). The only acts in the second amended complaint that arguably fall under this rule are: (1) Borzilleri's affidavit, which was filed in this case on April 10, 2000, and stated that Exhibit B to the affidavit was the only written communication made by the defendants to the lessees, and (2) Borzilleri's affidavit, which was filed in this case on September 30, 2000, and stated that the defendants had produced all documents pursuant to the plaintiffs' requests for production. *See* 2d Am. Compl. at ¶ 93.

The plaintiffs have included a discussion of these affidavits in their second amended complaint in order to extend the duration of the pattern of racketeering activity. Under Eleventh Circuit law, however, Borzilleri's affidavits are legally insufficient to establish predicate acts or to extend the duration of the enterprise. This is because the statements contained in the affidavits are nothing more than acts of concealment[9]. That is, in these affidavits, Borzilleri has done nothing more than "cover up" the fact that the defendants may have made additional communications to the lessees and prevented the plaintiffs from obtaining discovery material. "[S]uch attempts merely to conceal an underlying illegal predicate act are not sufficient to establish the open-ended continuity required for RICO claims." *Jackson v. Bellsouth Tele., Inc.,* 181 F.Supp.2d 1345, 1360 (S.D.Fla.2001) (citing *Aldridge v. Lily–Tulip Inc. Salary Retirement Plan Benefits Cmte.,* 953 F.2d 587, 593–94 (11th Cir. 1992)); *see also United States v. Knowles,* 66 F.3d 1146, 1155 (11th Cir.1995) (stating that acts of concealment are not part of conspiracy); *Gunn v. Palmieri,* No. 98–1418–Civ, 1989 WL 119519 *1 (E.D.N.Y. Sept.29, 1989) (rejecting attempt to base civil RICO claim on litigation misconduct); *Old Time Enter,. Inc. v. Int'l Coffee Corp.,* No. Civ–A 98–1371, 1989 WL 98850 *2 (E.D.La. Aug.17, 1989) (rejecting argument that "false representations made in connection with pending litigation" were actionable under RICO). To the extent that the plaintiffs seek to establish that the enterprises continued into 2000, they will need to rely on the other predicate acts

---

Property Act must be stricken because that statute requires the commission of fraud. This argument is without merit because the act is much broader than the defendants submit. It punishes "whoever transports, transmits, or transfers in foreign commerce any goods, wares, merchandise, securities or money ... knowing the same to have been *stolen, converted or* taken by fraud...." 18 U.S.C. § 2314 (emphasis added).

9. Although it is true, as plaintiffs contend, that the filing of these affidavits may have hindered and delayed these proceedings, particularly as the affidavits relate to discovery requests, the court cannot construe the content of these affidavits as anything more than acts of concealment.

alleged in the complaint. Accordingly, the allegations regarding obstruction of justice are stricken.

It is hereby

**ORDERED AND ADJUDGED THAT:**

1. Munson's motion to dismiss (DE # 220) is GRANTED IN PART AND DENIED IN PART.

2. Counts VII and VIII of the second amended complaint are STRICKEN, and counts V, VI, IX, and X remain.

3. The allegations regarding mail fraud, wire fraud, and litigation misconduct are STRICKEN from the second amended complaint.